(No. 3613— )

HAROLD ROEBUCK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 8, 1942.*

WALTER G. HAGEMEYER, for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

FISHER, J.

This claim was filed May 26, 1941. It is for benefits under the Workmen's Compensation Act prayed by claimant for permanent partial loss of the use of his left leg, and for temporary total disability suffered as a result of an accident received in the course of and out of claimant's employment.

The complaint alleges that claimant, while working with a surveying crew, was subjected to a shock of electricity when one of the crew members with whom he was working brought the engineer's level rod into contact with a high

power transmission wire. Claimant, together with two other men with whom he was working, was knocked to the ground, and claimant was found at the bottom of the cut near the pavement at a point of about twenty to twenty-five feet from where he had been standing, and as a result thereof claimant sustained serious and permanent injuries to his left leg. Claimant was taken to Dr. Trotter at Carthage, Illinois, and his leg was set and a cast applied. He was also examined and treated by Dr. H. B. Thomas, Professor of Orthopedics at the University of Illinois Medical College.

Claimant further alleges that he was paid for the year prior to this accident as annual earnings, the sum of Two Thousand Forty Dollars ($2,040.00) and his weekly wage was, therefore, Thirty-nine and 23/100 Dollars ($39.23). That at the time of his injury claimant was thirty-eight (38) years of age, was married and had four children under the age of sixteen (16).

Claimant further alleges that no third party or corporation has any interest in this claim; that all medical bills and transportation costs have been reimbursed to claimant.

Claimant seeks an award of Two Thousand Three Hundred Seventeen and 14/100 Dollars ($2,317.14), less the sum of Eight Hundred Twelve and 96/100 Dollars ($812.96) heretofore paid to claimant, or One Thousand Five Hundred Four and 18/100 Dollars ($1,504.18).

Claimant in this case is an employee of the State and his employment is such that he is within the provisions of the Workmen's Compensation Act. From the evidence produced by the claimant and the report of the Division of Highways, there would seem to be no doubt that the accident arose in the course of and out of the employment of claimant. It is the contention of the respondent, however, that the court is without jurisdiction for the reason that the claim was not filed in apt time.

The claimant was injured on the 25th day of May, 1938 and was temporarily totally disabled from that date to October 13, 1938, when he returned to work. Claimant was requested to and did submit to further examinations and treatments in Chicago for two days during January, 1939, one day in June 1939, on May 26th and May 29th, 1940, and was examined the last time on April 15, 1941. These examinations and treatments were at the request of respondent and the ex-

penses of claimant for these trips to Chicago and the charges for the examinations and treatments were paid for by respondent. Claimant's complaint was filed on May 26, 1941.

It is true that much more than a year elapsed between the date of the injury and the filing of this complaint. Therefore, the precise question before this court is, whether the furnishing of medical, surgical and hospital services and payment therefor by respondent, the payment of expenses incurred in trips to Chicago for treatment and the full payment for time spent in an effort to effect a cure without denial of liability, should be regarded as the payment of compensation under the Act.

In the case of *Newman Co.* vs. *Industrial Commission,* 353 Ill. 190, our Supreme Court said:

"The Workmen's Compensation Act is a humane law of a remedial nature, and wherever construction is permissable its language should be liberally construed. (*City of Chicago* vs. *Industrial Commission,* 291 Ill. 23; *Chicago Cleaning Co.* vs. *Industrial Board,* 283 id. 177.) A strained construction not fairly within the provisions of the act cannot be supported. (*Berry Co.* vs. *Industrial Comm.,* 318 Ill. 312). There was no denial by the employer of liability, and it has been repeatedly held by this court that the furnishing of medical, surgical and hospital services must be regarded as the payment of compensation under the act. *Goodman Manf. Co.* vs. *Industrial Com.,* 316 Ill. 394."

Our Supreme Court, in the case of *United Air Lines, Inc.* vs. *Industrial Commission,* 364 Ill. 346, said:

"Where employer makes payments to injured employee during period of time when latter is unable to work and liability under this act is not denied, such payments will be construed as in consequence of employer's liability under doctrine that when employer has knowledge of injury and does not deny liability employee has right to regard payments as made under act and is not bound to demand further compensation as long as payments are continued."

Respondent did not at any time deny liability. On the contrary, the entire relationship between claimant and respondent was one of co-operation to relieve and cure claimant of his admitted serious injury. Respondent went much further in this case than reimbursement for medical expenses. Compensation was actually paid by full payment of salary during the time this claimant was absent from his work, in seeking medical treatment. The whole record of this case indicates that the State recognized liability and attempted to cure and compensate claimant. The State made every effort to relieve the claimant from the effects of the injury, which

full effect was not ascertained until the last examination, immediately prior to the filing of the claim. A report of the Division of Highways, a part of the record of this case, in showing the amount paid to claimant, describes these payments as compensation. To hold that the failure of claimant to file his claim during the time both he and respondent were seeking to effect a cure and before the full effect of the injury was known bars him from seeking compensation would defeat substantial justice.

Claimant had his last examination on April 15, 1941, only a little over a month prior to the filing of his claim. It was at that time he learned that no further treatments would benefit him and was in a position to determine that his leg would be permanently injured. This court is of the opinion that claimant's complaint was filed in apt time and the court has jurisdiction thereof.

There is considerable disagreement between the respondent and the claimant as to the extent of the permanent injury to the leg. Both claimant and respondent agree that there is 145 degrees of flexion in the normal movement of the knee, and do not differ much on the permanent loss in degrees of this motion of the knee. After a careful review of the medical testimony, it is a fair conclusion to say that the claimant is permanently injured to the extent of 62 degrees in his flexion motion of the knee, or approximately forty (40) per cent. Respondent ingeniously reasons that there is also one hundred forty-five (145) degrees motion of extension in the knee and that in the case of the leg three joints are involved, the hip, knee and ankle, and in determining the relation of each joint to the others respondent gives to the hip one hundred twenty-five (125) per cent, to the knee one hundred (100) per cent and to the ankle seventy-five (75) per cent, a total of three hundred (300) per cent in the leg, and then concludes that the permanent injury to the leg is seven (7) per cent. Claimant contends that it is fifty (50) per cent. The court cannot agree with the contention of the respondent, as it is possible to hurt the hip in such a way that the use of the leg would be lost regardless of the condition of the knee or ankle joint. This is also true with respect to the ankle and knee joints. Claimant has a certain definite restriction in the use of his knee joint, and this necessarily must impair the efficient use of his whole leg. Claimant will

have a permanent impairment for any physical exertion where the use of his leg is required and will be handicapped in the performance of his duties as an engineer. From a consideration of all of the evidence it would appear to this court that a reasonable conclusion would be that claimant has been permanently injured to the extent of thirty (30) per cent of the use of his entire leg, and the court so finds.

For the year next preceding claimant's injury he received a salary of One Hundred Seventy Dollars ($170.00) per month, which would make his compensation the maximum of Fifteen Dollars ($15.00) per week, which is further increased to the maximum of Twenty Dollars ($20.00) per week due to the fact that claimant has four children under sixteen years of age. Claimant is therefore entitled to an award of Four Hundred Dollars ($400.00) for total temporary disability computed on the basis of twenty (20) weeks at the rate of Twenty Dollars ($20.00) per week, and is further entitled to an award of Eleven Hundred Forty Dollars ($1,140.00) for permanent partial loss of the use of his left leg computed on the basis of thirty (30) per cent of one hundred ninety (190) weeks or, fifty-seven (57) weeks at the rate of Twenty Dollars ($20.00) per week. This makes a total of Fifteen Hundred Forty Dollars ($1,540.00), from which must be deducted the sum of Eight Hundred Twelve and 96/100 Dollars ($812.96), being the sum already paid to claimant, leaving a balance of Seven Hundred Twenty-seven and 04/100 Dollars ($727.04).

An award is therefore made to claimant in the sum of Seven Hundred Twenty-seven and 04/100 Dollars ($727.04), all of which is accrued and is payable forthwith.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30th, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.